UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KELLY KEY,

                Plaintiff,                Civil Action No. 22-10849

v.                                   F. Kay Behm
                                   United States District Judge

CITY OF DETROIT,                David R. Grand
                                   United States Magistrate Judge

                Defendant.
_____/

## REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 83)

On April 20, 2022, *pro se*[1] plaintiff Kelly Key ("Key") commenced this employment discrimination/harassment and retaliation action against the City of Detroit ("City"). (ECF No. 1). Pursuant to 28 U.S.C. § 636(b), all pretrial matters have been referred to the undersigned. (ECF No. 93).

On August 7, 2023, the City filed a motion for summary judgment. (ECF No. 83). Key filed no less than seven responses and/or amended responses to this motion. (ECF Nos. 84, 85, 88, 89, 90, 91, 92). On September 18, 2023, after reviewing each of these filings in detail, the Court entered an order striking several of them and making clear that it would consider only the arguments set forth in ECF Nos. 84 and 92 in ruling on the City's dispositive motion. (ECF No. 95). On September 20, 2023, the City filed a reply brief in

---

[1] At the time of the filing of his complaint, Key was represented by counsel. However, on February 23, 2023, the Honorable F. Kay Behm entered an order granting Key's attorney's motion to withdraw as counsel. (ECF No. 18). Since then, Key has been proceeding *pro se* in this case.

support of its motion for summary judgment.  (ECF No. 98).  The Court heard oral argument on the City's motion on October 18, 2023.  Subsequently, the Court held two settlement conferences, but unfortunately a settlement was not reached.

## I.      RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that the City's Motion for Summary Judgment **(ECF No. 83)** be **GRANTED IN PART AND DENIED IN PART**.

## II.     REPORT

### A.     Factual Background

#### 1.     *Key's Employment History with the City*

Key is a bisexual[2] male, who was hired by the City on March 5, 2018.  (ECF No. 1, PageID.2).   He worked as a Coach Service Attendant in the City's Department of Transportation, and his primary job duties involved fueling and cleaning City buses.  (*Id.*; ECF No. 83-4).  In that role, Key worked at the Gilbert Garage in the City of Detroit, and his direct supervisor was Imari Barksdale ("Barksdale"), who apparently reported to Michael Dawley ("Dawley"), currently the Superintendent of Rolling Stock within the Department of Transportation.  (ECF No. 1, PageID.2; ECF 83-10, PageID.576).  There is no dispute that Key's job performance was satisfactory; indeed, Dawley indicated in an affidavit that Key "was a good worker …."  (ECF No. 83-3, PageID.546).  Key last reported for work with the City on July 13, 2019.  (ECF No. 83-12).

---

[2] Although Key asserts in his complaint that he is gay (ECF No. 1, PageID.2), he testified at his deposition that he is bisexual (ECF No. 83-2, PageID.481, 506).

## 2.      The Alleged Harassment

In his complaint, Key alleges that, soon after beginning work at the Gilbert Garage,

he suffered "severe and pervasive sexual harassment, and harassment based on his sexual

orientation, from his co-workers."  (ECF No. 1, PageID.2).   Attempting to digest the

allegations made by Key in his complaint, as well as in his deposition testimony and at oral

argument, it appears that Key is alleging the following acts of harassment:

- Beginning in March or April of 2019, a female co-worker, Kenya Bray
("Bray"), touched him "[a]t least ten times," on "six or seven" different days,
including by flicking his shoulder and poking him in the chest.[3]  (ECF No.
112, PageID.780-82).   On another occasion, Bray allegedly grabbed Key's
arm and pulled it, in an effort to show him something about his job.  (ECF
No. 83-2, PageID.507).   Key also alleges that a male co-worker, Sammie
Baker ("Baker"), touched him in the chest once.  (*Id.*, PageID.486).

- In his complaint, Key alleges that his co-workers "were constantly
attempting to get him to engage in sexual conversations."  (ECF No. 1,
PageID.3).  For example, Key testified at his deposition that Bray joked about
wanting other employees to have sex with him on the back of City buses.
(ECF No. 83-2, PageID.485).  According to Key, his female co-workers were
"pretending to try to seduce him, knowing that he was a gay male."  (ECF
No. 84, PageID.631).  At oral argument, however, Key conceded that no one
ever asked him to have sex with a co-worker; rather, he felt this was merely
insinuated.  (ECF No. 112, PageID.787, 791).

- Key asserts that Baker commented to a group that "Kelly and I spent the
night together" after they both worked the night shift.  (ECF No. 1, PageID.3;
*see also* ECF No. 83-2, PageID.486 (alleging that, after Key and Baker
worked the night shift together, Baker said "I was with Kelly all night")).

- Key testified at his deposition that, on one instance, while he was cleaning a
restroom, both Baker and Barksdale "exposed themselves" to him."  (*Id.*,

---

[3] At his deposition, Key characterized these various forms of physical touch as being "caressed a
lot."  (ECF No. 83-2, PageID.484).  However, "caress" is defined as "to touch or stroke lightly in
a loving or endearing manner."  *See* https://www.merriam-webster.com/dictionary/caress (last
accessed January 26, 2024).  It does not appear that the physical touches of which Key complains
– such as "flicking" or "poking" – would be considered "caressing."

PageID.486, 497).  At oral argument, however, Key backpedaled from this allegation, admitting that neither Baker nor Barksdale ever actually exposed their genitals to him at any time.  (ECF No. 112, PageID.795-96).

In his complaint, Key alleges that he reported this alleged harassment to Barksdale on several occasions, both verbally and in writing, but Barksdale "refused to take any action to stop the harassment."  (ECF No. 1, PageID.3).  As a result, Key "elevated his complaints of harassment to [the City's] human resources department in or about June 2019."  (*Id.*).

### 3. *Key Files a Complaint with the City's Civil Rights Department*

On June 14, 2019, Key filed a complaint with the City's Civil Rights, Inclusion & Opportunity Department ("CRIO") regarding the alleged harassment by Bray and Baker. (ECF No. 83-7).  Key alleges that certain unnamed City officials then retaliated against him "by assigning him to clean the bathrooms instead of his regular job duties, making him engage in humiliating work duties while other employees were unaffected and increasing the verbal and physical harassment."  (ECF No. 1, PageID.3).  When Key allegedly complained to Dawley about this alleged retaliation, he claims "the superintendent responded that 'this is what you get for going to HR.'"  (*Id.*, PageID.4).  Similarly, Key claims that Dawley "told him that 'we are supposed to take care of these things in-house, but you went outside' of the garage with complaints of harassment."  (*Id.*).[4]

---

[4] There is no dispute that, after Key filed his CRIO complaint, an internal investigation was conducted.  (ECF No. 83-9).  On July 29, 2020, a letter summarizing the conclusion of this investigation – that Key's complaints were not substantiated – was prepared and sent to Angelica Jones, Interim Director of the City's Department of Transportation.  (*Id.*).  The City asserts that a copy of this letter "should have been sent" to Key (ECF No. 83, PageID.456); however, there is no indication in the record that he received it (and, indeed, Key testified at his deposition that he

4.     *Key Applies and is Approved for Intermittent FMLA Leave*

On July 1, 2019, just two weeks after he filed his CRIO complaint, Key sought approval for intermittent leave under the Family and Medical Leave Act ("FMLA") to care for his ailing mother. This request was approved by the City on July 25, 2019, retroactive to July 1, 2019. (ECF No. 83-11, PageID.580-81). It was anticipated that Key would be absent approximately once every three weeks, for one to two days at a time. (*Id.*).

5.     *Key's Employment is Terminated*

During this same period of time, however, Barksdale avers that "Key walked off the job without explanation ...."[5] (ECF No. 83-10, PageID.577). Barksdale further avers that "[w]hen [] Key didn't come back after five days, [he] notified the Superintendent [of the Department of Transportation] and [the City's] Human Resources [Department], that [Key] has failed to return to work." (*Id.*). On July 29, 2019, the City sent Key a letter to his home address on file, indicating as follows:

> Our records indicate that you have been absence [sic] since 7/13/2019 without medical documentation. If this absence is due to your FMLA – Family Intermittent, you will need to submit documentation for your Leave to be a Continuous FMLA – Family Leave. Or if this is not a medical leave and you are still absence [sic] without coverage, you are considered AWOL.

(ECF No. 83-12, PageID.584). In this letter, Key was warned that his failure to provide the City with the requested documentation by August 12, 2019, would serve as an

---

did not) (ECF No. 83-2, PageID.503).

[5] Key flatly denies walking off the job. (ECF No. 92-4, PageID.706). Rather, he testified at his deposition that, during this time period, he "had been calling and calling and calling" an individual named "Mike," who was the afternoon foreman. (ECF No. 83-2, PageID.504). According to Key, "Mike" told him that "as long as you call in every day, everything is fine ...." (*Id.*).

indication that he had voluntarily quit.  (*Id.*).  This letter was returned as undeliverable but with a forwarding address.  (*Id.*, PageID.586).  On August 13, 2019, then, the same letter was sent to Key's forwarding address, with an extension of time to August 27, 2019, to provide the requested documentation.  (ECF No. 83-13).  The City claims that, when it received no response from Key, he was terminated for being AWOL (absent without leave) on August 29, 2019, with an effective date of July 13, 2019 (his last day worked).[6]  (ECF No. 83, PageID.457).

6.    *The Instant Lawsuit*

On April 20, 2022, Key filed his complaint in the instant action, pleading six causes of action: harassment on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Elliott-Larsen Civil Rights Act ("ELCRA"), MCL 37.2101, *et seq.* (Counts I and IV); harassment on the basis of sexual orientation in violation of Title VII and the ELCRA (Counts II and V); and retaliation in violation of Title VII and the ELCRA (Counts III and VI).  (ECF No. 1).  The City now moves for summary judgment, arguing that there is no genuine issue of material fact as to any of Key's claims.[7]

---

[6] Key alleges that he "was forced to take a medical leave in September 2019 due to the severe anxiety and depression caused by the harassment and retaliation."  (ECF No. 1, PageID.4).  However, he provides no documentation substantiating this alleged medical leave (or even a request for such made in or around September 2019).  Key also claims that he attempted to return to work "in November or December 2019," but was told by City representatives that "they were 'trying to find out what is going on.'"  (*Id.*).  While Key allegedly "waited to hear from the [City] about his work status," the COVID-19 pandemic resulted in the shutdown of the City's bus system.  (*Id.*).  Key claims that, without informing him, the City "apparently terminated [his] employment sometime in 2020."  (*Id.*, PageID.5).  There is no documentary evidence in the record substantiating any of these allegations.

[7] The City also argues that Counts I and II – for harassment on the basis of sex and sexual orientation in violation of Title VII – should be dismissed because Key failed to exhaust his administrative remedies.  (ECF No. 83, PageID.459-61).  Specifically, the City points out that

For the reasons set forth below, the Court finds that the City is entitled to summary judgment on Key's harassment claims, but that Key has raised a genuine issue of material fact as to his retaliation claims under both federal and state law.

### B.  Standard of Review

Pursuant to Rule 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011).  A fact is material if it might affect the outcome of the case under governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party.  *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

---

although Key filed a charge of discrimination with the EEOC, he checked the box indicating only that he was a victim of retaliation – not that he was subject to discrimination on the basis of sex. (*Id.*).  Although dismissal of a Title VII claim is appropriate where the plaintiff did not allege that type of claim in his EEOC charge, "'whe[n] facts with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim.'"  *See, e.g., Hill v. Oak Street Health MSO LLC*, No. 22-10684, 2023 WL 4206065, at *4 (E.D. Mich. June 27, 2023) (quoting *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998)).  Here, Key alleged in his charge of discrimination that he "was subjected to multiple assaults by multiple co-workers"; that a "couple of them even exposed themselves to [him]"; and that he believed he was discharged in retaliation for complaining about "workplace harassment." (ECF No. 83-16, PageID.617).  As the *Hill* court recognized, "because aggrieved employees – and not attorneys – usually file charges with the EEOC, … courts may also consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge."  *Hill*, 2023 WL 4206065, at *4 (internal quotations omitted).  Given the facts set forth in Key's EEOC charge, dismissal of Key's Title VII harassment claims on exhaustion grounds is not appropriate, and the Court will proceed to address the merits of these claims.

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (quoting *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989)). Indeed, "'[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'" *Id*. (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)). "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Id*. at 560 (citing *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

### C.   Analysis

#### 1.   *Hostile Work Environment Harassment Claims*

As set forth above, Key alleges that he was harassed – and therefore subjected to a hostile work environment – on the basis of both his sex (male) and his sexual orientation (gay and/or bisexual) in violation of Title VII and the ELCRA. (ECF No. 1, PageID.5-7,

8-10; ECF No. 83-2, PageID.481).   The Sixth Circuit has recognized that the same analytical framework applies to harassment claims under both the ELCRA and Title VII. *See, e.g., Khalaf v. Ford Motor Co.*, 973 F.3d 469, 482, 488 (6th Cir. 2020) (analyzing ELCRA and Title VII hostile work environment claims under the same standard).

To establish his hostile work environment claims under both Title VII and the ELCRA, Key must prove: (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his sex or sexual orientation; (4) the harassment had the effect of unreasonably interfering with his work performance by creating an intimidating, hostile, or offensive work environment; and (5) the City knew or should have known about the harassment and failed to act.  *See Hamm v. Pullman SST, Inc.*, No. 22-11456, 2022 WL 16856092, at *2 (E.D. Mich. Nov. 10, 2022); *see also Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999).  As this Court recently summarized:

> A hostile work environment occurs when the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.  The totality of the circumstances must be considered to determine, objectively, [whether] the alleged harassment is sufficiently severe or pervasive to constitute a hostile work environment.  The issue is not whether each incident of harassment standing alone is sufficient to sustain the cause of action in a hostile environment case, but whether, taken together, the reported incidents make out such a case….  Subjective beliefs about mistreatment in employment are insufficient to survive summary judgment.

*Malloy v. DeJoy*, No. 21-12094, 2023 WL 6518826, at *5 (E.D. Mich. Oct. 4, 2023) (internal citations omitted).  As Key acknowledges, "[p]etty slights, annoyances, and isolated incidents (unless extremely serious) will not rise to the level of illegality."  (ECF

No. 92-1, PageID.689).   Rather, to be unlawful, "the conduct must create a work environment that would be intimidating, hostile, or offensive to *reasonable people*." (*Id.*) (emphasis added).   Evaluating Key's hostile environment claims under this framework, summary judgment in the City's favor is appropriate.

The Court will assume for purposes of this motion that Key has satisfied the first two prongs of his hostile environment claims – namely, that he is a member of a protected class (male and gay/bisexual), and he was subjected to unwelcome harassment.   With respect to the third prong – whether the harassment was based on his sex or sexual orientation – the analysis is more complicated.   Key testified at his deposition that he never disclosed his sexual orientation to anyone at the City.   (ECF No. 83-2, PageID.496, 506). And, both Dawley and Barksdale denied having any knowledge of Key's sexual orientation at the time of the events in question.   (ECF No. 83-3, PageID.546; ECF No. 83-10, PageID.577).   However, the City presented no affidavits from the alleged harassers (Bray and Baker) as to their knowledge (or lack thereof) of Key's sexual orientation, and Key testified at his deposition that it was "quite obvious" that he was "perceived" as bisexual and/or gay, based on interactions he had with these individuals (although he provided no evidence in support of his belief that this was true).   (ECF No. 83-2, PageID.496).   Thus, where there is no dispute that Bray and Baker were aware of Key's sex, and Key testified that they also were aware of his sexual orientation, the Court will presume the existence of a genuine issue of material fact as to whether the alleged harassment was based on Key's sex or sexual orientation and continue its analysis.

Turning to the fourth prong, however, even viewing the facts in the light most

favorable to Key, he has not established that the alleged harassment had the effect of unreasonably interfering with his work performance by creating an intimidating, hostile, or offensive work environment. *See Hamm*, 2022 WL 16856092, at *2. As set forth above, Key's allegations of "harassment" can be divided into two categories: physical and verbal. With respect to the alleged physical harassment, Key claims that: (1) Bray "flicked" his shoulder during a meeting, poked him in the chest, and, once, pulled his arm to demonstrate something about the job; and (2) Baker poked him in the chest on one occasion. (ECF No. 83-2, PageID.486, 507; ECF No. 112, PageID.780-82). With respect to the alleged verbal harassment, Key claims that: (1) Bray joked about other employees having sex with him on City buses; and (2) Baker told a group that "Kelly and I spent the night together" after they both worked the night shift. (ECF No. 1, PageID.3; ECF No. 83-2, PageID.485, 486).[8]

In evaluating Key's claims that these isolated comments and/or touches created a hostile work environment, the Court must "ask whether a reasonable person, in the totality of circumstances, would have perceived the conduct at issue as substantially interfering with the plaintiff's employment or having the purpose or effect of creating an intimidating, hostile, or offensive employment environment." *Mazur v. Wal-Mart Stores, Inc.*, 250 F. App'x 120, 128 (6th Cir. 2007) (internal quotations omitted). "Courts must examine 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening

---

[8] Key also testified at his deposition that, while he was cleaning a restroom, both Baker and Barksdale "exposed themselves" to him." (ECF No. 83-2, PageID.486, 497). As set forth above, however, *supra* at 4, Key admitted at oral argument that neither Baker nor Barksdale actually exposed their genitals to him at any time. (ECF No. 112, PageID.795-96). Thus, this alleged incident is not evidence of ongoing harassment.

or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Hussain v. Highgate Hotels, Inc.*, 126 F. App'x 256, 268 (6th Cir. 2005)). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) do not rise to that level." *Hussain*, 126 F. App'x at 268 (internal quotations omitted). Thus, the "severe or pervasive" prong has a subjective and an objective component. *See Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 568 (6th Cir. 2021).

Here, Key has provided sufficient evidence, in the form of his own deposition testimony, that he *subjectively* perceived the actions of Bray and Baker to be offensive and abusive. As to the *objective* prong, however, Key has not raised a genuine issue of material fact. Viewing the alleged comments and physical touches from the perspective of a reasonable person in Key's position, a jury simply could not reasonably find that the work environment at issue was objectively hostile. Indeed, most – if not all – of the physical touching of which Key complains is touching that a reasonable person might find annoying or unprofessional, but would not find intimidating, hostile, or offensive in a manner that would unreasonably interfere with Key's work performance (such as being "flicked" on the shoulder, "poked" in the chest, or grabbed by the arm to demonstrate something work-related). Moreover, the isolated verbal comments at issue are neither threatening nor even particularly sexual in nature; indeed, certain allegedly offensive comments amount to little more than immature teasing (*i.e.*, Baker's comment that "Kelly and I spent the night together" after they both worked the night shift). Courts have found harassment far more severe than that at issue in this case insufficient to survive summary judgment. *See, e.g.,*

*Nathan*, 992 F.3d at 565-70 (five comments – including claims that the plaintiff "needed a more supportive bra" and that her "breasts looked like they were drooping" were insufficient to satisfy the "severe or pervasive" prong); *Clark v. United Parcel Service, Inc.,* 400 F.3d 341, 351-52 (6th Cir. 2005) (plaintiff's supervisor's vulgar jokes, placing a vibrating pager on her thigh and asking her if it felt good, and pulling her overalls after she told him she was wearing a thong did not constitute conduct pervasive enough to alter the conditions of the plaintiff's employment); *Bowman v. Shawnee State Univ.,* 220 F.3d 456, 464 (6th Cir. 2000) (several incidents of harassment, including shoulder rubbing, grabbing of buttocks, and suggestive comments, were not severe or pervasive); *McClain v. Ford Motor Co.*, No. 19-12722, 2023 WL 2410993, at *5-6 (E.D. Mich. Mar. 8, 2023) (plaintiff's allegations that a coworker "engaged in highly inappropriate conversations about sex and genitalia on a few occasions and showed Plaintiff two sexual pictures," in addition to making other sexual comments, "merely amount to either minor workplace disputes or uncomfortable moments, but nothing that even approaches the line of being a violation of Title VII or the ELCRA").

Because Key has not raised a genuine issue of material fact that the alleged harassment created an intimidating, hostile, or offensive work environment, summary judgment in the City's favor is appropriate on Key's hostile environment claims.

### 2. Retaliation Claims

Key also asserts claims for unlawful retaliation in violation of Title VII (Count III) and the ELCRA (Count VI). Specifically, Key alleges that he was assigned "humiliating job duties," subjected to increased harassment, and discharged (and/or constructively

13

discharged) in retaliation for his complaints about the alleged harassment discussed above. (ECF No. 1, PageID.8).   A plaintiff may prove retaliation through either direct or circumstantial evidence.   *See Browning v. Franklin Precision Indus., Inc.*, No. 23-5406, 2023 WL 8437235, at *3 (6th Cir. Dec. 5, 2023).   Because Key has not presented direct evidence of retaliation, the Court analyzes his claims under the burden-shifting framework first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).   *See Browning*, 2023 WL 8437235, at *3.   This same framework applies to retaliation claims brought under both Title VII and the ELCRA.   *See Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004) ("Cases brought pursuant to the ELCRA are analyzed under the same evidentiary framework used in Title VII cases.").

Under the *McDonnell Douglas* framework, Key must first establish a *prima facie* case of retaliation by showing that: (1) he engaged in a protected activity; (2) the City knew that he engaged in this activity; (3) the City took an adverse employment action against him; and (4) there is a causal connection between the protected activity and the adverse employment action.   *See Browning*, 2023 WL 8437235, at *3.   If Key makes out a *prima facie* case, the burden shifts to the City to articulate a legitimate, non-retaliatory reason for any adverse action(s) taken against him.   *Id*.   If the City meets that burden, to survive summary judgment, Key must identify evidence from which a reasonable jury could conclude that the proffered reason is pretextual in nature.   *Id*.   Key can meet his final burden by demonstrating that the City's stated reason "1) has no basis in fact; 2) did not actually motivate the adverse action; or 3) was insufficient to motivate the adverse action."   *Id.* (quoting *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003)).   The ultimate

burden remains with Key to convince the factfinder that the City retaliated against him for engaging in protected activity.  *See Jackson v. Genesee Cty. Road Comm'n*, 999 F.3d 333, 344 (6th Cir. 2021).

a.    *Key's* Prima Facie *Case*

As set forth above, to make out a *prima facie* case of retaliation, Key must show that: (1) he engaged in a protected activity; (2) the City knew that he engaged in this activity; (3) the City took an adverse employment action against him; and (4) there is a causal connection between the protected activity and the adverse employment action.  *See Browning*, 2023 WL 8437235, at *3.  Here, the evidence establishes that Key engaged in protected activity when he filed his CRIO complaint; the City knew of this activity; and he suffered an adverse employment action – namely, discharge.[9]  In terms of the fourth prong of his *prima facie* case, however, Key merely asserts – in conclusory fashion – that there "is a causal connection between the protected activity and the adverse employment actions."  (ECF No. 1, PageID.8, 11).  While Key does not point to any specific evidence of such a causal connection, courts have held that close temporal proximity between a protected activity and an adverse action may allow an inference of causation under certain

---

[9] As set forth above, Key also alleges that he was assigned "humiliating job duties" (such as cleaning restrooms) in retaliation for his complaints of harassment.  (ECF No. 1, PageID.8).  In his affidavit, Barksdale avers that such job assignments were not retaliatory in nature, saying that everyone in Key's job classification "was made to clean not only the buses, but the facilities too, including bathrooms."  (ECF No. 83-10, PageID.576).  The job description for the Coach Service Attendant position tends to support Barksdale's assertion, as it summarizes the duties of that position as "perform[ing] basic preventive maintenance on automotive equipment *and perform[ing] related work as required*."  (ECF No. 83-4, PageID.549) (emphasis added).  Regardless, because Key's termination clearly was an adverse employment action, this element of the *prima facie* case is satisfied.

circumstances.  *See Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008).

Here, where Key filed his CRIO complaint on June 14, 2019, and his employment was

terminated August 29, 2019 (with an effective date of July 13, 2019, the last day he reported

to work), the Court finds that such temporal proximity at least raises a material question of

fact sufficient to satisfy the causal connection prong of Key's *prima facie* case.  *See Wyatt

v. Nissan N. Am., Inc.*, 999 F.3d 400, 427 (6th Cir. 2021) (finding a "one-to two-month

time lapse between the protected activities and the adverse actions suffices to establish a

genuine issue as to causation"); *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Sch.*, 974

F.3d 652, 664 (6th Cir. 2020) (explaining that an adverse employment action "just a few

months" after learning of a plaintiff's protected activity is sufficient to establish causal

connection on temporal proximity alone).  Thus, Key has sufficiently made out a *prima

facie* case of retaliation.

> b.  *The City's Legitimate, Non-Retaliatory
> Reason for Terminating Key's Employment*

Because Key has established a *prima facie* case of retaliation, the burden shifts to

the City to articulate a legitimate, non-retaliatory reason for the termination of his

employment.  *See Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706-07 (6th Cir. 2006).

Here, the City asserts that Key walked off the job without explanation on July 13, 2019,

and, despite being notified that additional medical documentation was needed if he was

seeking to take continuous FMLA leave, Key never submitted such paperwork and, thus,

was considered to have voluntarily quit.  The City produced evidence that it sent Key two

letters explaining what was required of him, and he failed to comply with these

requirements.  (ECF Nos. 83-12, 83-13).  And, while Key claims he did not receive either letter, it is not the role of this Court at the summary judgment stage to make a factual determination as to the credibility of the City's proffered reason.  Having articulated a legitimate, non-retaliatory reason for Key's discharge, the City has satisfied its burden of production at this stage.  *See Santiago v. Meyer Tool Inc.*, No. 22-3800, 2023 WL 3886405, at \*4 (6th Cir. June 8, 2023) (the burden on the defendant to present a legitimate, non-retaliatory reason for the plaintiff's termination "is quite low; it is only one of production, not persuasion, and we make no credibility assessment") (internal quotations omitted).  Thus, the burden shifts back to Key to show that the City's proffered reason for his discharge was pretextual.

> c.   *Key Has Raised a Genuine Issue*
> *of Material Fact as to Pretext*

Key may establish pretext by showing that the proffered reason (1) has no basis in fact; (2) did not actually motivate his discharge; or (3) was insufficient to motivate his discharge.  *See id.* at \*5; *see also Miles v. South Central Human Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020).  This three-part test need not be applied rigidly, as pretext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?  *See Miles*, 946 F.3d at 888.

In its motion for summary judgment, the City's argument regarding pretext is wholly conclusory in nature.  Indeed, the entirety of the City's pretext argument reads as follows: "Plaintiff is unable to establish that the Defendant's legitimate non-discriminatory reason for termination was pretext."  (ECF No. 83, PageID.473).  Although Key does not

clearly state which of the three methods he is using to establish pretext, he appears to focus on the first and second prongs[10] – arguing that the proffered reason for his termination (*i.e.*, the fact that he was AWOL) has no basis in fact and that, even if he did fail to report to work, this fact did not actually motivate his discharge.

As set forth above, the City asserts that Key was terminated because he walked off the job without explanation on July 13, 2019, and, despite being notified in writing that additional medical documentation was needed if he was seeking to take continuous FMLA leave, Key never submitted such paperwork and, thus, was considered AWOL.  Key disputes the City's assertion, claiming that he did not receive either of the letters purportedly mailed to him.  (ECF No. 83-2, PageID.504).  Moreover, not only does Key maintain that he was never told that additional action on his part was required to keep his job, but he claims that, to the contrary, "Mike," the afternoon foreman, told him that "as long as [he] call[ed] in every day, every thing [sic] is fine."  (*Id.*).  The question, then, is whether Key's assertions in this respect are sufficient to establish a genuine issue of material fact that the reason proffered by the City for his termination was pretextual in nature.  Although this is an extremely close call, the Court finds in Key's favor on this issue for several reasons.

---

[10] Briefly, Key has not raised a material question of fact as to the third prong, as he has not shown that the proffered reason for his termination was insufficient to have motivated the City to discharge him.  This type of argument is ordinarily proven with evidence that a similarly situated employee was treated more favorably for the same conduct that resulted in the adverse action against the plaintiff.  *See Russell v. Univ. of Toledo*, 537 F.3d 596, 607 (6th Cir. 2008).  Here, Key has not pointed to any employee who was treated differently for allegedly walking off the job without providing documentation establishing the necessity of FMLA leave.  Thus, Key has failed to raise a material question of fact as to pretext under the third *Miles* prong.

First, despite the fact that Key unequivocally testified to "Mike's" alleged statement at his deposition, the City did not address Key's testimony in its dispositive motion, let alone seek to refute Key's claim by producing evidence to the contrary from "Mike." And, when pressed on this issue at oral argument, counsel for the City ambiguously responded that "Mr. Dawley, Mike Dawley, does not acknowledge that [Key] continually called in." (ECF No. 112, PageID.798). Counsel then admitted, however, that although Mr. Dawley executed an affidavit, he did not deny Key's assertion therein; rather, he simply said nothing regarding this issue. (*Id.*, PageID.798-99).[11] Finally, rather than rebutting Key's sworn testimony with evidence to the contrary, the City focused on the fact that Key "presented no phone records" substantiating his claim that he called "Mike" on a daily basis regarding his ongoing absences. (*Id.*, PageID.798). While Key's testimony might be viewed more favorably by the trier of fact if it is corroborated by phone records, the City has cited no case law for the proposition that such additional evidence is necessary to create a question of fact, and, indeed, courts have held that a plaintiff's testimony alone can be

---

[11] Moreover, if the "Mike" to whom Key is referring is in fact Dawley – which the City's comments suggest is the case – there is additional evidence in the record supporting Key's claim of pretext. Specifically, Key testified that Dawley expressed dissatisfaction about Key filing a CRIO complaint. (ECF No. 83-2, PageID.487; *see also* ECF No. 1, PageID.4 (Key's allegation that Dawley "told him that 'we are supposed to take care of these things in-house, but you went outside' of the garage with complaints of harassment.")). While Dawley denies Key's allegations, he admits in his affidavit that he recommended to Human Resources that Key's employment be terminated. (ECF No. 83-3, PageID.546-47). The Court cannot resolve credibility issues at summary judgment. Thus, viewing this evidence in the light most favorable to Key, as the Court must do at this stage of the case, a reasonable juror could conclude that Dawley recommended termination because he was unhappy with Key's CRIO complaint, rather than because of Key's allegedly unapproved absence from work. *See Jackson*, 999 F.3d at 351 (where there are "two reasonable interpretations of the evidence, we must allow the jury to resolve the issue" of whether the evidence cited is sufficient to prove retaliation).

sufficient to create a genuine issue of material fact as to pretext.[12] *See, e.g., Horwath v. DHD Windows and Doors, LLC*, No. 3:18-cv-1422 (CSH), 2020 WL 3316560, at *29 (D. Conn. June 17, 2020) (testimony presented by plaintiff about supervisor's discriminatory remarks, while disputed, creates a question of material fact as to whether the proffered reason for the plaintiff's termination was a pretext for discrimination) (citing *Miller v. Nat'l Life Ins. Co.*, No. 07cv00364 (PCD), 2009 WL 347567, at *8 (D. Conn. Feb. 11, 2009) (noting that, at the pretext stage, "[a]lthough Defendant disputes the testimony concerning [the plaintiff's supervisor's] comments and both sides question the credibility of the other's witnesses, credibility is a question for the jury")). For all of these reasons, Key has raised a genuine issue of material fact that the proffered reason for his termination was a pretext for retaliation, and, thus, summary judgment should be denied as to those claims.

In summary, the Court finds that, while quite weak in many respects, Key's retaliation claims narrowly survive summary judgment and are for a jury to decide.

## III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that the City's Motion for Summary Judgment **(ECF No. 83)** be **GRANTED IN PART**, with respect to Counts I, II, IV, and V, and **DENIED IN PART** with respect to Counts III and VI.

Dated: January 26, 2024          s/David R. Grand
Ann Arbor, Michigan              DAVID R. GRAND
                                 United States Magistrate Judge

---

[12] It also bears mentioning that because Key testified to this fact at his deposition, the City could have sought production of Key's telephone records if it felt they would have undercut his testimony.

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above.  *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1).  Failure to timely file objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).   Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 26, 2024.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
